**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY L. LUMPKIN, an Individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PINE CREST HEALTH CARE, LLC and ) <br> ICARE CONSULTING SERVICES LLC, ) <br> ) <br> Defendants. ) <br> ) | Case No.: |

**COMPLAINT**

COMES NOW the Plaintiff, Stanley L. Lumpkin, through his counsel of record, Michael J. Merrick of Merrick Law Firm LLC, and for his complaint against Defendants states and alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff Stanley Lumpkin is African-American. In 2018 he complained about another employee making racially-offensive comments in the workplace. His supervisor told him that the racial comments were made "off the cuff" and that Mr. Lumpkin shouldn't worry about it. Mr. Lumpkin transferred to one of Defendants' other nursing homes to get away from the hostile environment. In 2019 Mr. Lumpkin's former supervisor transferred to Mr. Lumpkin's facility and became his supervisor again. Mr. Lumpkin's supervisor immediately retaliated by attempting to give him an unsatisfactory annual performance review even though he had not observed Mr. Lumpkin's performance. He also criticized Mr. Lumpkin's attendance, including FMLA-protected absences to care for his disabled grandmother who had raised him. In 2020 Mr. Lumpkin requested a 30-day FMLA leave of absence to care for both of his grandparents. During a meeting

on August 12, 2020 Defendants summarily denied his request for FMLA leave calling it "unprofessional" and complaining it would have put management "behind the 8-ball." Defendants terminated his employment the next day claiming that he had quit his job the day before. Defendant's claim is a pretext. Mr. Lumpkin did not quit. He clocked out to take intermittent FMLA leave to attend his grandmother's medical appointment with the prior approval of management. Mr. Lumpkin brings this wrongful termination action under the FMLA, ADA, Title VII, 42 U.S.C. Section 1981, and the IHRA.

## JURISDICTION & VENUE

2. Subject matter jurisdiction is premised on the federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claims arise under the following federal laws: the Family and Medical Leave Act, 29 U.S.C. §§2612-2615 ("FMLA"); the Americans with Disabilities Act, as amended by the Americans With Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq*. ("ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. ("Title VII"); and 42 U.S.C. §1981 ("Section 1981"). This Court has supplemental jurisdiction over Plaintiff's Illinois Human Rights Act ("IHRA") claims under 28 U.S.C. §1367.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2002e-5(f)(3) as Defendants have employees and do business in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Plaintiff would have remained employed in this judicial district but for the unlawful employment practices alleged herein.

## PARTIES

4. Plaintiff Stanley L. Lumpkin ("Lumpkin" or "Plaintiff") is a citizen of the United States and at all relevant times was employed by Defendants at the Pine Crest Health Care facility located at 3300 75th Street, Hazel Crest, Illinois.

5. Defendant Pine Crest Health Care, LLC ("Pine Crest") is an Illinois limited liability company with a principal office located at 3300 75th Street in Hazel Crest, Illinois.

6. Defendant iCare Consulting Services LLC ("iCare") is an Illinois limited liability company with a principal office located at 8153 Lawndale Avenue in Skokie, Illinois.

7. Defendants are related entities and have common ownership. iCare manages Pine Crest and several other related nursing homes and rehabilitation centers in the Chicagoland area.

8. iCare directed the unlawful denial of Lumpkin's request for FMLA leave and termination of his employment.

9. Defendants are a joint and/or integrated employer under the FMLA, ADA, Title VII, 42 U.S.C. § 1981, and the IHRA.

## COMMON ALLEGATIONS

10. Lumpkin is African-American.

11. On or about March 19, 2015 Lumpkin commenced employment with Defendants' related entity, Park View Rehab Center ("Park View").

12. Lumpkin most recently worked as Assistant Administrator of Pine Crest.

13. At all times Lumpkin met Defendant's legitimate performance expectations.

14. In or about February 2018 Lumpkin complained to David Zaruba ("Zaruba"), then the Administrator of Park View, about racial slurs made by the Assistant Director of Nursing including, "we having a ghetto Christmas," and "your hair is so thick it can stop a bullet."

3

15. Zaruba dismissed Lumpkin's complaint telling him that the Assistant Director of Nursing had made the comments "off the cuff" and that he shouldn't take it seriously.

16. Lumpkin subsequently escalated the matter to Sharon Hinkle ("Hinkle"), iCare's Vice President of Operations, and requested to be transferred to a different facility to get out of the racially-hostile environment. Upon information and belief, Defendants did not terminate, discipline, admonish or take any other action against the Assistant Director of nursing for making racist statements in the workplace.

17. In or about September 2018 Lumpkin transferred to Pine Crest as its Assistant Administrator.

18. Lumpkin's grandparents, who raised him as a child, have disabilities as defined by the Americans With Disabilities Act.

19. In or about December 2019 Lumpkin applied for intermittent leave under the Family and Medical Leave Act (FMLA) to help care for his grandmother.

20. Defendants granted Lumpkin's FMLA application.

21. On or about March 19, 2020 the former Administrator of Pine Crest resigned and Zaruba transferred in and became the new Administrator of Pine Crest.

22 At that time, Lumpkin was working from home because of a facility-directed quarantine due to the Covid-19 pandemic.

23. On or about March 30, 2020 Lumpkin returned to work at the office.

24. On Lumpkin's first day back at the office, Zaruba made an issue of Lumpkin's attendance and tried to give him a negative annual performance review.

25. Lumpkin questioned how Zaruba could do Lumpkin's annual evaluation when Zaruba had just transferred to the facility. Zaruba replied that Hinkle had advised him regarding Lumpkin's performance evaluation.

26. Lumpkin complained that the evaluation process was unfair because Hinkle did not directly supervise him and was not at the Pine Crest facility on a daily basis.

27. Lumpkin also reiterated to Zaruba that he had approved intermittent FMLA leave to care for his grandmother.

28. Zaruba relented and gave Lumpkin a satisfactory performance review.

29. On or about August 3, 2020, Lumpkin submitted to Zaruba a written request for a 30-day FMLA leave commencing on August 14, 2020 to care for both of his grandparents. Lumpkin offered to work from home if necessary as he had done when staff quarantined due to the Covid pandemic in March 2020.

30. On or about August 5, 2020, Zaruba and Hinkle met with Lumpkin about his requested FMLA leave.

31. Hinkle told Lumpkin it was unprofessional of him to submit his request for FMLA leave.

32. Hinkle also told Lumpkin that if he took FMLA leave it would cause the facility to fall behind in payroll.

33. Lumpkin offered to do payroll remotely as he had done during the Covid quarantine in March 2020.

34. Hinkle remarked that Lumpkin wasn't "administrative material" and said they would meet to further discuss his request on August 12, 2020 at 11:00 a.m.

35. On or about August 10, 2020, Lumpkin learned that his grandmother had just had a medical appointment set for 1:30 p.m. on August 12, 2020 which he needed to attend. Lumpkin informed Zaruba of the appointment well in advance of their scheduled meeting, and Zaruba told Lumpkin that would be fine since the meeting was set for 11:00 a.m.

36. On or about August 12, 2020, the scheduled meeting did not begin until about 11:45 a.m. and Lumpkin was not invited when it started. Zaruba, Hinkle, and Linda Gant, iCare's Human Resources Director, started the meeting without him.

37. Lumpkin was called into the meeting at about 1:00 p.m. Hinkle began by asking him, "What's with this" FMLA leave request?

38. Hinkle stated that Lumpkin's request for FMLA leave was unprofessional and he was putting them "behind the 8-ball."

39. Lumpkin told them his grandparents were ill and getting worse, and that he was simply requesting FMLA leave to help care for them and get their affairs in order.

40. Hinkle stated that Lumpkin's request for FMLA leave was totally unacceptable and denied.

41. Hinkle then asked Lumpkin whether he planned to resign his employment.

42. Lumpkin told her no, he did not intend to resign.

43. At about 1:15 p.m. Lumpkin had to leave for his grandmother's 1:30 p.m. medical appointment.

44. Hinkle asked him what was so important that he had to leave at that time.

45. Lumpkin told her that his grandmother is what was so important and that he had previously requested time off for her medical appointment.

46. Hinkle asked "when was this?"

47. Gant stated that she was aware of it and that Lumpkin had advised her earlier that morning.

48. Hinkle then asked Lumpkin who he had informed and commented that Zaruba was the Administrator, not Gant.

49. Lumpkin stated that he had previously cleared it with Zaruba.

50. Hinkle then said, "Dave?"

51. Zaruba responded that he did know of the medical appointment.

52. Lumpkin elaborated that he had let Zaruba know previously and Zaruba had told him it would not be a problem because the meeting was to begin at 11:00 a.m.

53. Lumpkin said it is almost 1:30 p.m. and he needed to leave to make his grandmother's appointment.

54. Lumpkin then asked that they put the denial of his FMLA leave request in writing.

55. After several moments of silence, Hinkle then said, "Okay let him go."

56. Lumpkin then clocked out and left for his grandmother's appointment.

57. On or about August 13, 2020 when Lumpkin arrived at work that morning, Zaruba and Mary Strickland, iCare's Director of Clinical Services, were at the entrance and would not let Lumpkin enter the facility.

58. Zaruba handed Lumpkin a box of his personal belongings and told him that his employment was terminated because he voluntarily resigned the day before.

59. Lumpkin stated that he did not quit, he clocked out for his grandmother's medical appointment they had discussed earlier which was covered by his intermittent FMLA.

60. Lumpkin asked Zaruba to put the termination if his employment in writing.

7

61. Lumpkin also asked for written confirmation that his request for 30-days of FMLA leave was denied the day before.

62. Zaruba told Lumpkin that he would not get anything in writing because he quit the day before. Lumpkin then left the facility.

63. Lumpkin did not quit or voluntarily resign his employment in any way. Defendants subsequently withheld Lumpkin's final paycheck until he turned in his work keys.

64. Defendants' stated reason for terminating Lumpkin's employment is a pretext to hide unlawful discrimination and retaliation.

## COUNT I

## FMLA INTERFERENCE

65. At all relevant times Defendants were a covered employer under the FMLA.

66. Plaintiff was an eligible employee under the FMLA.

67. Plaintiff's grandparents suffered from serious health conditions as defined by the FMLA.

68. Plaintiff exercised his rights under the FMLA by attempting to take FMLA leave to care for his grandparents.

69. Defendants interfered with Plaintiff's rights under the FMLA in several respects including, but not limited to, by failing to provide him with proper notices of his FMLA rights, by denying his request for a 30-day FMLA leave, and by terminating his employment.

70. Defendants' conduct was done in willful violation of the FMLA.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT II

## FMLA DISCRIMINATION/RETALIATION

72. Plaintiff incorporates by reference paragraphs 1 through 71 as though fully set forth in this Count II.

73. Defendants discriminated and retaliated against Plaintiff in several ways including, but not limited to, by failing to provide him with proper notices of his FMLA rights, by denying his request for a 30-day FMLA leave, and by terminating his employment.

74. Defendants' conduct was done in willful violation of the FMLA.

75. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT III

## ADA DISABILITY DISCRIMINATION

76. Plaintiff incorporates by reference paragraphs 1 through 75 as though fully set forth in this Count III.

77. Defendants violated the ADA by terminating Plaintiff's employment because of his association with, and attempts to care for, his disabled grandparents.

78. Defendants acted with malice and reckless indifference to Plaintiff's federally-protected rights.

79. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

80. Plaintiff has exhausted his administrative remedies.

## COUNT IV

### IHRA DISABILITY DISCRIMINATION

81. Plaintiff incorporates by reference paragraphs 1 through 80 as though fully set forth in this Count IV.

82. Defendants violated the IHRA by terminating Plaintiff's employment because of his association with, and attempts to care for, his disabled grandparents.

83. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT V

### TITLE VII RACE DISCRIMINATION

84. Plaintiff incorporates by reference paragraphs 1 through 83 as though fully set forth in this Count V.

85. Defendants violated Title VII by discriminating against Plaintiff, including by terminating his employment, because he is African American.

86. Defendants acted with malice and reckless indifference to Plaintiff's federally-protected rights.

87. As a direct and proximate result of CCS Inc.'s unlawful conduct, Plaintiff suffered damages.

## COUNT VI

### SECTION 1981 RACE DISCRIMIANTION

88. Plaintiff incorporates by reference paragraphs 1 through 87 as though fully set forth in this Count VI.

89. Defendants violated 42 U.S.C. §1981 by discriminating against Plaintiff, including by terminating his employment, because he is African American.

90. Defendants acted with malice and reckless indifference to Plaintiff's federally-protected rights.

91. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT VII

## IHRA RACE DISCRIMINATION

92. Plaintiff incorporates by reference paragraphs 1 through 91 as though fully set forth in this Count VII.

93. Defendants violated the IHRA by discriminating against Plaintiff, including terminating his employment, because he is African American.

94. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT VIII

## TITLE VII RETALIATION

95. Plaintiff incorporates by reference paragraphs 1 through 94 as though fully set forth in this Count VIII.

96. Plaintiff engaged in protected activity by complaining about racial harassment, participating in an EEO process with Defendants and opposing what he reasonably believed to be unlawful conduct under Title VII.

97. Defendants retaliated against Plaintiff by terminating his employment because he had engaged in protected activity in violation of Title VII.

98. Defendant acted with malice and reckless indifference to Plaintiff's federally-protected rights.

99. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT IX

## SECTION 1981 RETALIATION

100. Plaintiff incorporates by reference paragraphs 1 through 99 as though fully set forth in this Count IX.

101. Plaintiff engaged in protected activity by complaining about racial harassment, participating in an EEO process with Defendants and opposing what he reasonably believed to be unlawful conduct under 42 U.S.C. §1981.

102. Defendant retaliated against Plaintiff by terminating his employment because he had engaged in protected activity in violation of Section 1981.

103. Defendant acted with malice and reckless indifference to Plaintiff's federally-protected rights.

104. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

## COUNT X

## IHRA RETALIATION

105. Plaintiff incorporates by reference paragraphs 1 through 104 as though fully set forth in this Count X.

106. Plaintiff engaged in protected activity by complaining about racial harassment, participating in an EEO process with Defendants and opposing what he reasonably believed to be unlawful conduct under the IHRA.

107. Defendant retaliated against Plaintiff by terminating his employment because he had engaged in protected activity in violation of the IHRA.

108. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff respectfully prays for judgment in his favor and against Defendants on all counts and for the following make-whole relief:

A. Preliminary and permanent injunctions enjoining Defendants from unlawfully discriminating or retaliating against Plaintiff and interfering with his employment;

B. Lost past and future wages and benefits in an amount to be proven at trial;

C. Compensatory damages in an amount to be proven at trial;

D. Liquidated damages;

E. Punitive damages;

F. Interest;

G. A tax offset award;

H. Other equitable relief including back pay, reinstatement and/or front pay;

I. Plaintiff's reasonable attorneys' fees and costs incurred herein; and

J. For such further relief that the Court may deem just and equitable.

**JURY DEMAND**

Plaintiff demands trial by jury.

                                      STANLEY L. LUMPKIN

                              By: /s/Michael J. Merrick
                                  Plaintiff's Attorney

Michael J. Merrick
Merrick Law Firm LLC
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Tel. (312) 269-0200
Fax (312) 269-0800
merrick@merricklawfirm.com
Attorney No. 6229849

*Attorney for Plaintiff*